UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelly Bright,<br><br>                Plaintiff,<br><br>    v.<br><br>American Home Shield Corp., a Delaware corporation,<br><br>                Defendant. | No. 2:20-cv-02079-KJM-CKD<br><br>ORDER |

Plaintiff Kelly Bright brings this action against her former employer, American Home Shield Corporation, alleging violations of California's Fair Employment and Housing Act, the Family and Medical Leave Act, and California's Family Rights Act, in addition to wrongful termination. Defendant moves to compel arbitration under the terms of the company's Dispute Resolution Plan. For the reasons below, the court **grants the motion**.

**I.  BACKGROUND**

American Home Shield (AHS) offered Kelly Bright a job in 2013. *See* Offer Letter at 2, Morrisse Decl. Ex. A, ECF No. 17-3. As part of accepting the job, Bright signed the offer letter, which set out terms and conditions of employment. *Id*. The letter stated that employment was "contingent on [Bright's] agreement to utilize ServiceMaster's alternative dispute resolution program *We Listen* to resolve any and all work-related disputes/concerns and to arbitrate such disputes if they are not resolved." *Id*. For five years, Bright participated in bonus programs. To

1

participate in the Executive Compensation Plan in 2013, Bright signed an acknowledgment form, which explained participation was "contingent on [Bright's] agreement to utilize ServiceMaster's alternative dispute resolution program *We Listen*." Morrisse Decl. Ex. B at 1, ECF No. 17-4. Each of the acknowledgment forms for the subsequent years contained similar language. *See* Morrisse Decl. Ex. C at 1, ECF No. 17-5; Morrisse Decl. Ex. D at 1, ECF No. 17-6; Duncan-Kahl Ex. A at 4, ECF No. 17-9; Duncan-Kahl Decl. Ex. B at 3, ECF No. 17-10. Two of the acknowledgment forms included hyperlinks to the *We Listen* Plan details, Morrisse Decl. Exs. B & C, two others warned to "**NOT SIGN THIS DOCUMENT UNLESS YOU HAVE REVIEWED THE *WE LISTEN* PLAN**," Duncan-Kahl Exs. A & B. The terms of the *We Listen* program are also in the employee handbook, although the parties did not intend for the handbook itself to create a contract. Bright Decl. ¶¶ 2–3, ECF No. 22-1. Finally, Bright received a notice that she was bound by the We Listen Plan if she was employed by AHS on or after January 1, 2016. *We Listen* Dispute Resolution Plan at 1, Morrisse Decl. Ex. E, ECF No. 17-7.

The *We Listen* Dispute Resolution Plan provides for four steps: 1) an open-door policy and contacting Human Resources or the Ethics Helpline, 2) a senior executive review, 3) mediation, and 4) arbitration. *Id* at 2. The Plan "covers any Employee employed by the Company . . . on or after January 1, 2016" and "covers all Disputes . . . against any of the following: (i) the Company; (ii) its current and former officers, directors, employees, or agents in their capacity as such or otherwise; (iii) the Company's parent, subsidiaries and affiliated entities; and/or (iv) all successors and assigns of any of them."[1] *Id.* at 1. The terms of the Dispute Resolution Plan also make it the "exclusive remedy" and arbitration the "sole and final legal remedy," with an express "waiv[er of the employee's] right to a Court or Jury Trial." *Id*. at 3.

/////

---

[1] Bright argues AHS has not established that AHS or its parent company Frontdoor is in privity with ServiceMaster for purposes of the *We Listen* Dispute Resolution Plan. Opp'n at 2, ECF No. 22. However, in 2018 ServiceMaster assigned its rights and obligations under the Dispute Resolution Plan to Frontdoor. *See* Employee Matters Agreement § 2.04, Request for Judicial Notice, Ex. A, ECF No. 28-1; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012). Thus, privity exists.

1    Bright brings this action alleging AHS violated California's Fair Employment and
2    Housing Act, the Family and Medical Leave Act, and California's Family Rights Act, and
3    alleging that she was wrongfully terminated. *See Compl.*, ECF No. 1.
4    AHS now moves for the court to compel arbitration and to stay or dismiss this proceeding
5    pending the completion of arbitration. Mot., ECF No. 17. Bright opposes. Opp'n, ECF No. 22.
6    AHS replied, Reply, ECF No. 27, and the court submitted the matter on the papers, Min. Order,
7    ECF No. 19.

8    **II.   LEGAL STANDARD**

9    "[T]he Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs arbitration
10   agreements in contracts involving interstate commerce." *Shivkov v. Artex Risk Sols., Inc.*,
11   974 F.3d 1051, 1058 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021). "Generally, in
12   deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether
13   there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the
14   dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean
15   Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party moving to compel arbitration bears the
16   burden of showing each of these elements by a preponderance of the evidence. *Ashbey v.
17   Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "A court may invalidate an
18   arbitration agreement based on 'generally applicable contract defenses' like fraud or
19   unconscionability, but not on legal rules that 'apply only to arbitration or that derive their
20   meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd.
21   P'hip v. Clark*, ___U.S.___, 137 S. Ct. 1421, 1426 (2017) (quoting *AT & T Mobility LLC v.
22   Concepcion*, 563 U.S. 333, 339 (2011)). "[N]otwithstanding the language of § 3, a district court
23   may either stay the action or dismiss it outright when . . . the court determines that all of the
24   claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*,
25   755 F.3d 1072, 1074 (9th Cir. 2014).

26   **III.  ANALYSIS**

27   There is no dispute between the parties that the Dispute Resolution Plan is governed by
28   the FAA. *We Listen* Dispute Resolution Plan at 4. The Dispute Resolution Plan clearly covers

the dispute at hand as it applies to "all claims arising out of or related to [plaintiff's] employment, or termination of employment," including claims regarding "discrimination based on . . . disability," "leave status," "retaliation," "the Family and Medical Leave Act . . . and any similar state or local laws." *Id*. at 1. The only question is whether the agreement is valid. "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under California law, "mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Validity also turns on the applicability of "defenses to enforcement that apply to contracts generally," such as unconscionability. *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003)

  **A.**  **Assent**

  While Bright is correct that the inclusion of the Dispute Resolution Plan in the employee handbook by itself did not create a contract, Opp'n at 5, Bright signed her offer letter and multiple acknowledgements, agreeing to use the Dispute Resolution Plan, *see* Morrisse Decl. Exs. A–E; Duncan-Kahl Decl. Exs. A–B. Under California law "parties may validly incorporate by reference into their contract the terms of another document." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (citation omitted). "To have a valid incorporation by reference, the terms of the document being incorporated must be known or easily available to the contracting parties." *Reynolds v. NRC Env't Servs. Inc.*, No. 20-5262, 2020 WL 6083112, at *4 (C.D. Cal. Aug. 24, 2020) (citing *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1194 (2009)). Bright had the terms of the Dispute Resolution Plan readily available in her employee handbook. Additionally, two acknowledgment forms she signed included hyperlinks to the website listing the program details. Morrisse Decl. Exs. A–E. The terms of the Dispute Resolution Plan were validly incorporated by reference into the offer letter and bonus compensation plans.

  Bright argues the agreement is not binding because of a lack of mutual assent. She was under the impression that the *We Listen* Plan was only intended to "resolve personality conflicts"

4

1   with co-workers.  Bright Decl. ¶ 3.  Bright argues that she did not know the Dispute Resolution
2   Plan required her to arbitrate any claims against her employer, and "there cannot be a binding
3   contract when a party to it did not know that it was entering into a binding contract."  Opp'n at 3–
4   5 (citing *Saint Agnes Medical Ctr. v. Pacificare of California*, 31 Cal.4th 1187, 1200 (2003)).
5   However, "the law effectively presumes that everyone who signs a contract has read it
6   thoroughly, whether or not that is true."  *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93
7   (2013), *as modified* (Sept. 18, 2013).  "[I]n the absence of fraud, overreaching or excusable
8   neglect, th[e] one who signs an instrument may not avoid the impact of its terms on the ground
9   that he failed to read the instrument before signing it."  *Id.* (citation and internal marks omitted).
10  "[C]ourts must also presume parties understood the agreements they sign, and that the parties
11  intended whatever the agreement objectively provides, whether or not they subjectively did."  *Id.*
12  Bright repeatedly signed documents agreeing to utilize the Dispute Resolution Plan.  That she
13  apparently did not understand the clear terms, which required her to "**WAIVE [HER] RIGHT**
14  **TO A COURT OR JURY TRIAL AND AGREE THAT THE PLAN IS THE EXCLUSIVE**
15  **REMEDY THE COMPANY AND I HAVE FOR RESOLUTION OF DISPUTES**," *We*
16  *Listen* Dispute Resolution Plan at 3, does not equate to a lack of mutual assent.
17       Even if these agreements did not result in a binding contract, Bright nevertheless accepted
18  the terms of the Dispute Resolution Plan.  "California law permits employers to implement
19  policies that may become unilateral implied-in-fact cont[r]acts when employees accept them by
20  continuing their employment."  *Reynolds*, 2020 WL 6083112, at *5 (citing *Asmus v. Pacific Bell*,
21  23 Cal. 4th 1, 11 (2000)).  Here, Bright received the December 2015 Dispute Resolution Plan,
22  which explained the Plan "cover[ed] any Employee employed by the Company" and "[a]n
23  Employee acknowledges his/her agreement to the Plan by continuing employment . . . after
24  receiving notice of this Plan document."  *We Listen* Dispute Resolution Plan at 1.  Bright
25  continued working for AHS until November 15, 2019.  Compl. ¶ 36.  By working for AHS for
26  nearly four years after receiving the *We Listen* Dispute Resolution Plan, Bright assented to the
27  Dispute Resolution Plan.

### B. Unconscionability

Finally, Bright argues the agreement to arbitrate is unconscionable. An arbitration agreement can be "invalidated by generally applicable contract defenses, such as . . . unconscionability." *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 719 (9th Cir. 2012). "[T]he party opposing arbitration bears the burden of proving [the] defense." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012). Both procedural and substantive unconscionability "must [ ] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause. . . ." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*.

#### 1. Procedural Unconscionability

Procedural unconscionability "concerns the manner in which the contract was negotiated" *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). The court looks to whether there is oppression, which "arises from an inequality of bargaining power which results in no real negotiation[,] 'an absence of meaningful choice[,]'" and surprise, which "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982). Bright contends the imposition of the Dispute Resolution Plan is procedurally unconscionable because she "was not given an opportunity to negotiate the terms" and she did not "understand that the agreement would bind her to arbitrate any claims that she may have against her employer." Opp'n at 12. While "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability . . . the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (citations and internal marks omitted). "In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive

6

unconscionability is high." *Id.* (citations and internal marks omitted).  The court is not convinced there was an element of surprise based on Bright's misunderstanding of the *We Listen* Plan. While she may have honestly thought the only intention of the plan was to resolve conflicts between employees, the language is clear, that she was required to "resolve all Disputes in accordance with the terms of the Plan." *We Listen* Dispute Resolution Plan at 1.  However, the court finds there is at least a minimum amount of procedural unconscionability given the adhesive nature of the agreement.  At the same time, this level of procedural unconscionability is not a sufficient basis for refusing to enforce the contract absent a substantial level of unconscionability.

### 2. Substantive Unconscionability

Alternatively, "[s]ubstantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.'" *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88 (2003).  In arguing the *We Listen* Dispute Resolution Plan is substantively unconscionable, Bright points to two elements of the four-step process. First, she argues the plan does not mutually bind the employee and employer to participate in the process.  Opp'n at 9.  And second, she argues the first step, which the employee "must exhaust," *We Listen* Dispute Resolution Plan at 2, provides the employer with a "free peek" into the employee's case.  Opp'n at 9–10.  Bright relies heavily on *Nyulassy v. Lockheed Martin Corporation*, 120 Cal. App. 4th 1267 (2004) and the Ninth Circuit's reliance on it in *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010).  Bright attempts to draw parallels between the agreements the courts held unconscionable in those cases and the Dispute Resolution Plan at issue in this case.  *Nyulassy* specifically held three elements taken together "render[ed] [the agreement] substantively unconscionable." 120 Cal. App. 4th at 1283.  Those elements were 1) time restrictions on the assertion of claims, 2) lack of mutuality, and 3) defendant having a "free peek" into plaintiff's case before arbitration.  *Id.*

First, the court notes the Dispute Resolution Plan does not place an inappropriate time restriction on the assertion of claims.  In *Nyulassy*, the agreement required plaintiff to assert his claim within 180 days of the date when the controversy first arose, which was shorter than some

7

relevant statute of limitations that provided more than three years to bring claims. *Id*. Alternately, the Dispute Resolution Plan at issue here only dictates that "[d]isputes must be initiated with the Plan prior to the end of the applicable statute of limitations." *We Listen* Dispute Resolution Plan at 1.

Next, the court notes that, on its face, the Dispute Resolution Plan mutually binds the parties to arbitration for ultimate resolution of disputes. In *Nyulassy*, "[t]he arbitration clause plainly contain[ed] only a unilateral agreement to arbitrate" so claims by the defendant employer were "not subject to the arbitration clause." 120 Cal. App. 4th at 1282. "Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability." *Pokorny*, 601 F.3d at 997–98 (citations and internal marks omitted). The Dispute Resolution Plan here "includes a mutual agreement to arbitrate." *We Listen* Dispute Resolution Plan at 1. It provides for "the exclusive, final and binding remedy for both the Company and [employees] and . . . neither the Company nor [employees] will be allowed to bring any Disputes to a court or jury for a resolution except as set forth in the Plan." *Id.* However, as noted below, there is a question of whether the Plan is mutual with regards to the mandatory pre-arbitration process.

Here, AHS's Dispute Resolution Plan requires the employee complete three mandatory steps before accessing arbitration with a third-party neutral. At step one, "[the employee] must notify the Ethics Helpline" to initiate the resolution process. *We Listen* Dispute Resolution Plan at 2. The parties will try to resolve the dispute through informal discussions with "a Human Resources or other Company representative" or an "Ombudsman." *Id.* Step two requires "[a] committee of senior executives of the Company review[] the facts and decisions made by the applicable manager(s) in order to correct mistakes and misunderstandings." *Id.* At this step "[the employee] may, but [is] not required, to submit a written statement to the committee." *Id.* A neutral third-party is not engaged until step three, when "[the employee] may invoke mediation." *Id.*

Based on the language in the Plan outlining the pre-arbitration steps, only the employee is required to engage in these steps before she can access arbitration. *See Greer v. Sterling Jewelers, Inc.*, No. 18-480, 2018 WL 3388086, at *8 (E.D. Cal. July 10, 2018) ("Although the

8

agreement on its face requires both the employer and the employee to use the RESOLVE Program to address disputes, it is apparent from the language of the agreement and from the way the program is described in the brochure that Steps 1 and 2 apply only to the employee, who is required to complete . . . additional steps that are not required of the employer."). There is no mention of how managers or other company representatives must contact the Ethics Helpline or submit to a multi-level review to resolve disputes the company has with an employee. The fact that an agreement "imposes a one-sided, multi-step, employer-controlled, pre-arbitration procedure upon employees" only can be a sign of lack of mutuality. *Tzovolos v. Worldwide Flight Servs., Inc.*, No. 302303, 2020 WL 7867313, at *5 (Cal. Ct. App. Jan. 4, 2020) (unpublished).

Lastly, the court finds the Dispute Resolution Plan does allow AHS a "free peek" into the substance of plaintiff's claims. In *Nyulassy*, "[t]he employment agreement . . . require[d] [plaintiff] to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration." 120 Cal. App. 4th at 1282–83. "Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration." *Id*. As noted, the *We Listen* Dispute Resolution Plan has three steps that must be completed before arbitration with a third-party neutral can commence. *We Listen* Dispute Resolution Plan at 2. "The lack of mutuality with respect to these pre-arbitration steps, combined with the concern articulated in *Nyulassy* about allowing the employer to preview the employee's case before arbitration, render this condition substantively unconscionable under the circumstances." *Greer*, 2018 WL 3388086, at *8.

Bright does not raise any other arguments about the arbitration process. She does not assert for example that the rules of the arbitration process, apart from the pre-arbitration steps, are substantially one sided or unfair. While the court finds there is some degree of substantive unconscionability because of AHS's "free peek" at an employee's case, it does not necessarily

9

taint the entirety of the Dispute Resolution Plan.  "If the court as a matter of law finds that the contract or any clause of the contract to have been unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  *Armendariz*, 24 Cal. 4th at 121–22.

As the "substantively unconscionable requirement of one-sided pre-arbitration dispute resolution steps is 'collateral to the main purpose of the contract,' severance is appropriate."  *Id.* at *8–9 (quoting *Armendariz*, 24 Cal. 4th at 124).  In *Armendariz v. Foundation Health Psychcare Services*, the California Supreme Court noted "two factors [that] weigh[ed] against severance[:]" the presence of "multiple unlawful provisions" and "the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement."  24 Cal. 4th at 124–25.  Here, there is only one provision that is unconscionable.  Apart from the prearbitration provisions, the agreement appears to be mutual.  Thus, the court severs the pre-arbitration steps.  With only minimal procedural unconscionability and the severance of the substantive unconscionable provisions, the court finds the arbitration agreement is valid and grants AHS's motion to compel arbitration.

### C. Stay

As Bright's claims are subject to arbitration the court "may either stay the action or dismiss it outright."  *Johnmohammadi*, 755 F.3d at 1074.  The court exercises its discretion to stay the case pending the outcome of arbitration.

### IV. CONCLUSION

The court **severs** the pre-arbitration steps from the arbitration agreement and otherwise **grants the motion to compel arbitration without those severed steps in effect (ECF No. 17)**.  The case is stayed pending the outcome of arbitration.  The parties shall file a joint notice with the court every sixty days updating the court on the status of arbitration.  The parties shall file a

/////

/////

/////

1 | notice with the court within seven days of completing arbitration, informing the court whether the
2 | stay can be lifted.
3 |     IT IS SO ORDERED.
4 | DATED: May 20, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE